**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LOIDY TANG, individually ) | |
| and on behalf of a class, ) | 11 C 2109 |
| ) | |
| Plaintiff, ) | Chief Judge Holderman |
| v. ) | |
| ) | Magistrate Schenkier |
| MEDICAL RECOVERY SPECIALISTS, ) | |
| LLC, d/b/a MRS, d/b/a MRSI and d/b/a ) | |
| MEDICAL RECOVERY SPECIALISTS, INC.,) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY BASED UPON
ARTICLE III CHALLENGE PENDING BEFORE THE SUPREME COURT**

Defendant MEDICAL RECOVERY SPECIALISTS, LLC, and pursuant to FRCP 1 and 16(c)(2)(P), submits the following Memorandum of Law in support of its motion to stay this case based upon an Article III challenge pending before the Supreme Court:

**I.  Introduction**

Plaintiff LOIDY TANG alleges that Defendant MEDICAL RECOVERY SPECIALISTS, LLC ("MRSI") violated The Telephone Consumer Protection Act, 47 U.S.C. § 227, ("TCPA") by placing an auto-dialed call to her cell phone while MRSI was attempting to collect a medial bill owed by another person.  The TCPA makes it unlawful "for any person … to make any call (other than a call … made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. §227(b)(1)(A)(iii); 47 C.F.R. § 64.1200.[1]

---

[1] Plaintiff also alleges that the subject phone call violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692  ("FDCPA") because it left prerecorded messages utilizing the name "MRS" rather than MRSI.

The TCPA provides that an individual can "recover for *actual monetary loss* from such a violation, *or to receive $500 in damages for each such violation*, whichever is greater . . . ." §227(b)(3)(B) (Emphasis supplied). The TCPA also provides for treble damages: "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) . . . ." §227(b)(3)(C). Plaintiff *does not* allege to have suffered any actual monetary damages. Rather, the Amended Complaint simply seeks statutory damages for Plaintiff and the class she purports to represent.[2] With regard to her FDCPA claim, Plaintiff does not claim actual damages and seeks an award of statutory damages. Plaintiff may lack Article III standing to assert these claims.

In *First American Financial Corporation vs. Edwards*, No. 10-708, the Supreme Court recently accepted certiorari in an appeal from the Ninth Circuit involving whether a private purchaser of real estate settlement services has standing to sue under Real Estate Settlement Services Act ("RESPA") <u>without having incurred any actual damages</u>. *See First American Financial Corporation vs. Edwards*, No. 10-708. RESPA is similar to the TCPA and FDCPA in the sense that it affords consumers statutory damages in the absence of actual damages.

For the reasons that follow, this Honorable Court should stay this case until such times as the Supreme Court rules in a pending appeal involving whether a plaintiff in a consumer class action context can satisfy Article III standing where the plaintiff has not suffered any actual damages.

---

[2] Unlike the FDCPA, the TCPA has not net worth cap to limit class based damages.

**II.     Argument**

The Supreme Court is poised to hear a consumer class action case involving the alleged lack of Article III standing.  In *First American Financial Corporation vs. Edwards*, No. 10-708, the Supreme Court accepted certiorari in an appeal from the Ninth Circuit involving whether a private purchaser of real estate settlement services has standing to sue under Real Estate Settlement Services Act ("RESPA") without having incurred any actual damages.  *See First American Financial Corporation vs. Edwards*, No. 10-708 (Exhibit A, order granting cert.). Briefing is nearly complete and oral argument in the *Edwards* case is schedule for November 28, 2011.  *See*http://www.supremecourt.gov/Search.aspx?FileName=/docketfiles/10-708.htm.

In *Edwards*, the Ninth Circuit rejected the Defendant's argument that the plaintiff lacked Article III standing where the plaintiff had not suffered any actual damages.  Significantly, a diversity group entities have filed amicus briefs supporting the defendant's appeal to the Supreme Court.  *See* http://www.scotusblog.com/case-files/cases/first-american-financial-corp-v-edwards/.  While the issue before the Supreme Court relates to a violation of RESPA, if the Supreme Court reverses the Ninth Circuit, the Court's opinion will have wide ranging impact on other class action statutes such at the TCPA and the Fair Debt Collection Practices Act. (http://www.scotusblog.com/case-files/cases/first-american-financial-corp-v-edwards/, Brief of ACA International As *Amicus Curiae* in Support of Petitioners, discussing applicability of Article III standing to FDCPA claims at pp. 8-20).   Accordingly, the *Edwards* case provides an alternative basis for staying this case.

In light of the short nature of any stay and the real human and dollar costs associated with if discovery and class certification must go forward, no harm or prejudice will come from granting this stay.

### A.     Standard of Review For the Granting of a Stay

Pursuant to this Court's inherent power, a stay should issue because: (i) a stay will not unduly prejudice or tactically disadvantage the plaintiff; (ii) a stay will simplify the issues in question; and (iii) a stay will reduce the burden of litigation on the parties and on the Court. *See Pfizer Inc. v. Apotex Inc.*, 640 F.Supp.2d 1006, 1007 (N.D. Ill. 2009).

Staying this case while the *Edwards* appeal is pending is consistent with FRCP 1 which provides that the Federal Rule of Civil Procedure "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." *Pfizer*, 640 F.Supp.2d at 1010 (stating that a stay is appropriate to prevent a waste of judicial and party resources). Here, a temporary stay will avoid substantial costs and efforts associated with locating, extracting, and culling potential class members. *Genzyme Corp. v. Cobrek Pharmaceuticals, Inc.*, 2011 WL 686807 (N.D. Ill. Feb. 17, 2011) (stating that there is no prejudice to the non-movant where limited discovery has been conducted, no depositions have been taken, and no trial date has been set).

A stay is also consistent with FRCP 16, which among other things, allows courts to issue orders "facilitating in other ways the just, speedy, and inexpensive disposition of the action." Here, a stay would help conserve judicial resources. *See* FRCP 16(c)(2)(P). *See also*, FRCP 16(2)(A), (F), (K) and (L). A pretrial order can be modified for good cause. *See* FRCP 16(b)(4)..

As discussed below, all merits and class based discovery will be for naught if the Supreme Court rules in favor of the defendant on the issue of consent.

### B.     The *Edwards* Appeal Involves the Important Issue of Article III Standing

As noted above, the Supreme Court is currently addressing whether a plaintiff can satisfy Article III standing in a RESPA case where the plaintiff has not suffered any actual damages.

RESPA is similar to the TCPA and FDCPA claims in this case as liability is damages are most often awarded in the form of statutory damages. This is because most consumers do not suffer actual injuries in the context of consumer class actions. As discussed below, Plaintiff does not have standing to assert a TCPA or FDCPA claim.

It is proper to address subject matter jurisdiction at any time: "[i]t has been the virtually universally accepted practice of the federal courts to permit any party to challenge or, indeed, to raise *sua sponte* the subject-matter jurisdiction of the court at any time and at any stage of the proceedings." *Craig v. Ontario Corp.,* 543 F.3d 872, 875 (7th Cir. 2008).[3] Standing is "'an essential and unchanging part of the case-or-controversy requirement of Article III' of the Constitution." *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (*quoting, Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It is axiomatic that Article III standing requires an actual injury in fact. *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992); *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998). Injury in fact is part of the "irreducible constitutional minimum of standing," *Lujan,* 504 U.S. at 560. Historically, the "core component" of standing is "derived directly from the Constitution." *Allen v. Wright,* 468 U.S. 737, 751 (1984). This "outer limit to the power of Congress to confer rights of action is a direct and necessary consequence of the case and controversy limitations found in Article III." *Lujan,* 504 U.S. at 580. "[T]he most important" way in which this Court has enforced Article Ill's

---

[3] *See also, Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884) (challenge to a federal court's subject-matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte* ); *Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir.1986) ("The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged."); *McCready v. White,* 417 F.3d 700, 702 (7th Cir.2005) ("Ensuring the existence of subject matter jurisdiction is the court's first duty in every lawsuit."); Fed. Rule Civ. Proc. 12(h)(3) ( "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

5

"fundamental limits on federal judicial power in our system of government" is the "require[ment] [that] a litigant … have 'standing' to invoke the power of a federal court." *Allen,* 468 U.S. at 750. Here, Plaintiff lacks Article III standing because he has not suffered an actual injury.

"[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.,* 129 S. Ct. 1142, 1151 (2009). *See also Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979). Further, as noted in *Warth v. Seldin*, 422 U.S. 490 (1975), even after Congress has authorized suit, "Art[icle] III's requirement remains[, and] the plaintiff still must allege a distinct and palpable injury to himself." *Id.* at 501. *Warth* emphasized the need for a plaintiff to "allege specific, concrete facts demonstrating that the challenged practices harm *him."* *Id.* at 508. The fact that Congress has authorized a plaintiff to sue by granting a right of action against the defendant therefore does not, without more, satisfy the requirement of injury in fact. *Raines v. Byrd,* 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 487 n.24 (1982) ("Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under Art. III.").

There are numerous examples of where the Supreme Court has rejected Congressional attempts to establish causes of action where no injuries are suffered. In *Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982), the Court found that Article III imposed an independent injury-in-fact requirement, and ultimately concluded that the plaintiff had demonstrated "specific injury" and therefore satisfied Article III. *Id.* at 373-74. As discussed in *Steel Co.*, Congress

130191499v1 0922512 75799

enacted the Emergency Planning and Community Right-To-Know Act of 1986 which authorized suit by "any person" against the owner of a hazardous waste facility that failed to comply with the statute. Notwithstanding Congressional authorization, the Supreme Court held that the respondent lacked injury in fact and could not proceed with its suit. *See* 523 U.S. at 104-09. Similarly, in *Lujan*, the Endangered Species Act of 1973 contained a "citizen suit" provision authorizing "any person" to "commence a civil suit on his own behalf" against the government. The Court, held that the standing requirement was not satisfied. *See* 504 U.S. at 571-73. *Gollust v. Mendell,* 501 U.S. 115, 125 (1991) held that plaintiffs were required to "maintain some continuing financial stake in the litigation" in order to maintain an action under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). In reasoning that Article III requires a plaintiff to " 'allege a distinct and palpable injury to himself" to establish standing, the Court not only reaffirmed that Article III places a limit on Congress's ability to create standing by authorizing suit, but also made clear that the limitation applies in suits under statutes that provide tort-like causes of action in situations involving individual pecuniary harm. *Id*. at 126. More recently, in *Sprint Communications Co. v. APCC Services, Inc.,* 554 U.S. 269 (2008), the respondents sued pursuant to the private right of action under the Communications Act of 1934. While the Court did not question that the plaintiffs had been *assigned* causes of action, it still required them to establish standing under Article III. *See id.* at 273-74.

Strict compliance with Article III standing is proper. The Supreme Court has "always insisted on strict compliance with th[e] jurisdictional standing requirement." *Raines,* 521 U.S. at 819. "In an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so." *Arizona Christian Sch. Tuition Org. v. Winn,* 131 S. Ct.

7

1436, 1449 (2011). Accordingly, strict enforcement of the Article III standing requirement serves interests that are critical to the administration of justice and separation of powers.

The class-action context of this case underscores the importance of requiring the allegation (and, eventually, proof) of a well-defined injury in fact. In absence of an injury in fact, this proposed class action could result in over a million dollars in damages, without the existence of *any* individualized injury to Plaintiff. As the Supreme Court has recently reiterated, suits which threaten vast liability, have the *in terrorem* effect forcing settlement of even unmeritorious suits. *Cf. AT&T Mobility LLC v. Conception,* 131 S. Ct. 1740, 1752 (2011) ("[W]hen damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable.").[4] While it is the role of the judiciary to provide a forum to "obtain[] compensation for, or [to] prevent[], the violation of a legally protected right" (*Vermont Agency*, 529 U.S. at 772-73), where, as here, plaintiff has suffered no actual injury, plaintiff may not invoke the jurisdiction of the federal courts. *See also*, *Doe v. Chao,* 540 U.S. 614, 624-25 (2004) (only a plaintiff "subjected to an adverse effect has injury enough to open the courthouse door").[5]

Against this backdrop, Congress cannot eliminate the injury-in-fact requirement by

---

[4] *See also*, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558-59 (2007). Similarly, the Supreme Court has recognized that exercise of "judicial power" on behalf of litigants may "profoundly affect the lives, liberty, and property of those to whom it extends." *Valley Forge,* 454 U.S. at 473. When the potential liability created by a lawsuit is very great, even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good, *Blair v. Equifax Check Services,* 181 F.3d 832, 834 (7th Cir.1999); *In re Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293, 1297–1300 (7th Cir.1995).

[5] Class actions *may* serve a legitimate function to the extent that they enable recovery on behalf of a broad class whose members have each suffered an actual but small injury. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997). When it is used, however, to multiply by many thousands the kind of recovery - unmoored to a concrete injury - that this Court has compared to a "wager upon the outcome" of a lawsuit, *Vermont Agency,* 529 U.S. at 772, it is not within the traditional and legitimate role of the courts.

8

designating the experience of a legal violation a "*per se*" injury, irrespective of its effect on any individual plaintiff. To recognize such fictitious injuries would effectively eliminate the "hard floor" requirement that Article III imposes and would allow Congress to evade the separation-of-powers limits that Article III protects. *Summers,* 129 S. Ct. at 1151; *cf. City of Boerne v. Flores,* 521 U.S. 507, 536 (1997). While Congress has seen fit to allow RESPA, FDCPA and TCPA plaintiffs to obtain statutory damages without having to demonstrate that they have suffered actual damages, the Supreme Court may hold in *Edwards* that statutory damages violate the Constitution because such a type of damage improperly allows plaintiffs to avoid having to demonstrate an Article III case or controversy.

As discussed above, Congress does not have the power to eradicate Article III's minimum standing requirements. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event, however, may Congress abrogate the Art. III minima: A plaintiff must always have suffered a distinct and palpable injury to himself . . . that is likely to be redressed if the requested relief is granted."). To the extent Plaintiff argues that he has standing to require that Defendant comply with the TCPA and/or the FDCPA, this argument should be rejected. The Supreme Court has rejected standing based upon an "interest in seeing that the law is obeyed." *Akins,* 524 U.S. at 24. *See also, Steel Co.,* 523 U.S. at 107 (explaining that an interest in seeing "that a wrongdoer gets his just deserts" or "that the Nation's laws are faithfully enforced" is "not … a cognizable Article III injury"). Equating such interests with cognizable injuries would effectively authorize "citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws," an outcome this Court has decisively rejected. *Massachusetts v. EPA,* 549 U.S. at 516-17 (internal quotation marks omitted).

130191499v1 0922512 75799

While the Seventh Circuit has previously held that a plaintiff has standing under consumer-protection statutes to seek statutory damages where he/she has not suffered actual damages, *see, e.g., Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 665-666 (7th Cir. 2001), should the Supreme Court reverse the Ninth Circuit's holding which applied the same reasoning as *Crabill*, the Seventh Circuit's ruling would be subject to an immediate attack in this case. And if a standing argument is successful, any class based discovery in this case would be for naught. Given the costs associated with class based discovery and likely motion practice, the best course of action is to stay this case.

**IV.  Conclusion**

Defendant respectfully that this Honorable Court stay class briefing and class and merits based discovery until the until the Supreme Court rules on the *Edwards* case.

Date:  October 17, 2011                                        Respectfully submitted,

/s/*James C. Vlahakis*
David M. Schultz
James C. Vlahakis
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
dschultz@hinshawlaw.com
jvlahakis@hinshawlaw.com
Attorneys for Defendant

130191499v1 0922512 75799

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2011, I electronically filed the above notice of motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ James C. Vlahakis
James C. Vlahakis
Hinshaw & Culbertson LLP
Attorney for Defendant
222 North LaSalle, Suite 300
Chicago, IL 60601
tel 312-704-3715