**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LOIDY TANG, individually and on behalf of a class, | ) ) ) | 11 C 2109 |
| Plaintiff, | ) ) | Chief Judge Holderman |
| v. | ) ) ) | Magistrate Schenkier |
| MEDICAL RECOVERY SPECIALISTS, LLC, d/b/a MRS, d/b/a MRSI and d/b/a MEDICAL RECOVERY SPECIALISTS, INC. | ) ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S COMBINED RESPONSE IN OPPOSITION TO PLAINTIFF'S COMBINED MOTION TO COMPEL AND PLAINTIFF'S FOR SANCTIONS AND REQUEST FEES FOR CONDUCTING VEXATIOUS LITIGATION**

NOW COMES, Defendant, MEDICAL RECOVERY SPECIALISTS, LLC, by and through one of its attorney, James C. Vlahakis, and in response to Plaintiff's Combined Motion to Compel and Sanctions, submits the following Combined Response in Opposition and Request for Fees For Conducting Vexatious Litigation:

**I. Introduction**

Plaintiff's Combined Motion to Compel and for Sanctions is not well founded and should be denied. At best, it is a misrepresentation of the total record. At worst, it exemplifies an attempt to distort the record in a misguided attempt to secure a perceived tactical advantage before this Honorable Court. Moreover, as discussed below, aspects of Plaintiff's Motion to Compel reference issues that have not been discussed in conformity with Local Rule 37.2. Unfortunately, it appears that Plaintiff's Motion is the type of motion that is being more common place in this era of "win at all costs" and the general *absence of civility*. For example, August 25,

2011, in response to defense counsel's request in this case to "[p]lease send me your client's Rule 26 disclosures," Plaintiff's counsel wrote the following unprofessional diatribe to defense counsel:

> I sent them by mail on Friday dropping them off in the mail box downstairs as I left for the day at 10:00 a.m. With my kids. Service was via mail only. My copy was buried in paperwork as I was working since 4:30 a.m. Friday morning. Unlike you I do not use my kids as an excuse of why I cannot do things on time or need extensions. Here is a .pdf I just scanned of my copy.
>
> Please be advised that you will not get any more extensions from me nor will I agree to move any dates to accommodate your schedule. In this case you sniped at me writing in a motion before the Chief Judge that I was unprofessional and uncivil because even though I was in a educational class with my toddler you said I did not respond to your email asking if I would drop the motion for default fast enough. Now yesterday you asked me to move the hearing date (which I asked you first if you were available on that day before scheduling it and you said yes or that another attorney from your firm could cover it) on my pending motion to bar the lack of a protective order as an excuse to discovery production so you could take your kid to his first day of first grade. As soon as I said yes, then you promptly emailed me stating that the other matter you had up that day at the same time was canceled. So what you are telling me is that associate was free to go to the motion today, you knew it but decided to withhold that information to create more delay in this matter. I am tired of you not being able to keep both your personal life and professional like in order. I have two children under the age of 4, I work early mornings and late nights when needed to accommodate my litigation schedule, I am a solo unlike you who is a part of a 500 attorney law firm, I put my children first, I spend 3 days a week during business hours with my kids during the day taking and participating with them in their various classes, I spend the weekends with them, I take care of them after their grandma leaves in the early evening and am interacting with with them until their mother comes home which most nights is after 7:00 p.m. As such, I will not accept anymore excuses from you on why you cannot get your work/family life in order and need an extension of time. No more extensions.

**Exhibit A** (Pl's counsel's email dated ). A more complete copy of the email exchange between counsel that is referenced in Plaintiff's email is attached in **Exhibit B** (Defendant's Response to

Plaintiff's Motion for Default, dkt. 28[1]). Most recently, Plaintiff's counsel sent the following email to defense counsel in an unrelated case:

> Attached please find the first complete set of the proposed settlement documents in this matter. Having witnessed the amazing speed in which you can research and write a lengthy reply memorandum in around 4 hours as you demonstrated in Siegel, I have no doubt that we will be able to finalize the agreement, documents, and motion, and have it on file well before the time required by the Court prior to the preliminary approval date.
>
> As such, I look forward to a prompt response of any proposed revisions.

**Exhibit C** (Pl's counsel's email dated 12/6/2011). Plaintiff's reference to the *Siegel* case, *D.G. v. William W. Siegel & Associates*, 11-cv-00599 (N.D. Ill.), relates to a Motion to Enforce Settlement that was granted by Judge Kocoras. In ruling in favor of Defendant, Judge Kocoras repeatedly referred to Plaintiff's refusal to abide by the terms of the settlement agreement as "ridiculous." A transcript of the hearing has been ordered. Plaintiff's sarcastic reference to the *Siegel* proceeding in an unrelated case demonstrates a lack of professionalism that is permeating this case.

In counsel's experience before this Court, this is exactly the type of gamesmanship and snipping that this Court does not stand for. Defense counsel believes that his reputation as a professional should speak for itself[2], and does not want to be baited but such unprofessional

---

[1] In short, defense counsel suggested that Plaintiff's counsel was acting unprofessionally in *selectively* responding to certain emails from counsel and ignoring others. At the time, it appeared as if Plaintiff's counsel was playing games. At the motion hearing, after Judge Holderman instructed counsel to try to act civil, defense counsel offered his hand and his handshake was refused by Plaintiff's counsel. In writing to Plaintiff's counsel, defense counsel stated that he would put the matter behind him but suggested that other attorneys would not be so forgiving. *See* **Exhibit D**. Not surprisingly, this Court noted at one of the parties recent court appearance that it did not appear as if counsel could play nicely in the sandbox.

[2] *See* **Exhibit E**, defense counsel's biographical statement for the Law Bulletin's 2008 "40-Under-40" Publication, containing favorable statements from opposing counsel regarding

conduct as has been exhibited by Plaintiff's counsel. Respectfully, this Court should not grant Plaintiff's Motion to Compel or sanction Defendant. Rather, this Court should admonish fine Plaintiff's counsel for engaging in vexations litigation.

## II. Argument in Response to Motion to Compel/Sanctions

Notably, Plaintiff's Motion is 14 pages long (one page short of the length permitted some summary judgment motions and motions to dismiss). Given the length of Plaintiff's Motion, Defendant will attempt to offer a point-by-point analysis of the misstatements, inaccuracies and other errors contained in Plaintiff's Motion. This Court's standing order provides that parties must comply "with meet and confer requirement" with *specificity*. Plaintiff's attempts to document his efforts are purposefully vague and are not sworn. According to this Court, "[t]he mere exchange of correspondence will not normally be sufficient to comply with Local Rule 37.2"

As discussed below, Plaintiff's Motion does not comply with this mandate. In fact, as discussed below, numerous discussions have taken place, and the timing of Plaintiff's Motion is suspect given the fact that he knew during a relevant two week time period that defense counsel was traveling for work and on then a family vacation. When Plaintiff did not obtain the responses he was hoping for, he filed this premature motion, and did not bother to follow up with of the outstanding issues with a telephone call or a face-to-face meeting.

### A. Aspects of Plaintiff's Motion Do Not Comply with LR 37.2

Paragraph 6 misleading states that Plaintiff's counsel sent a so-called Rule 37 letter "[o]n August 31, 2011, *after* a face-to-face meeting between counsel for the parties discussing

---

Mr. Vlahakis' professionalism and demeanor. Mr. Vlahakis would not throw away all of this good will for a contrary position in a run-of-the-mill TCPA claim.

4

Plaintiff's issues with Defendant's discovery responses." (emphasis supplied)  Significantly, the date of the alleged meeting is not identified.  That is because no such meeting took place.  Rather, the August 31, 2011, letter was first emailed and then parties had a telephonic discussion regarding *aspects* on the letter on Friday September 9, 2011.  Defendant disputes that the parties discussed Interrogatory no. 6.  Rather, on October 10, 2011, Defendant supplemented other Interrogatory answers – to the exclusion of Interrogatory no. 6.  *See* Exhibit 7 to Pl's Mtn.  Notably, there is no mention by Plaintiff that prior to the transmittal of the August 31, letter that he discussed Interrogatory No. 6 with defense counsel.  The fact that Interrogatory No. 6 was *not* discussed is borne out by the fact that Defendant supplemented discovery responses mentioned in the August 31 letter, but not  Interrogatory no. 6.  *See* Pl's Mtn, Exhibit 7.

Accordingly, *if* Interrogatory no. 6 had been discussed during the September 9, 2011, telephonic discovery conference, Defendant would have followed through by providing a supplemental discovery response.  It was not until October 13, 2011, after other discovery responses were supplemented on October 10, 2011, that Plaintiff's counsel asked Defendant to supplement Interrogatory no. 6.  It was during that conversation that defense counsel attempted to provide Plaintiff with a possible answer.  *See* Exhibit 8 to Pl's Mtn. ("I believe that the final figure . . . will be 1,109 (accounts)."). Defense counsel made this representation in a good faith attempt to comply with FRCP 1, and to demonstrate transparency in the discovery process.

As discussed below, what Plaintiff fails to appreciate is that confirmation takes time.  Moreover, the 1,109 accounts does not take into account whether the *entire* "MRS" message was successfully left.[3]  Paragraphs 9-10 of Plaintiff's Motion identifies defense counsel's estimate of

---

[3]     After identifying this preliminary figure to Plaintiff's counsel, defense counsel learned of the possibility of incomplete messages.  Defense counsel's effort to obtain accurate discovery

82,913 messages. Given the volume of calls, it has taken longer than a few days to complete this review of outbound calls. Accordingly, Defendant is still attempting to confirm this by reviewing call logs for approximately 83,000 outbound calls

While paragraph 12 of Plaintiff's Motion complains that Defendant did not "chang[e] the substance of its previous response," when Defendant transmitted a fully verified discovery response on October 3, 2011 (which was originally transmitted to Plaintiff w/o verification on July 12, 2011). Plaintiff's argument is misleading to the extent that it suggests that Defendant somehow promised to amend Interrogatory No. 6. As discussed above, Interrogatory No. 6 was not discussed by the parties as being one that Defendant was going to supplement.

When Defendant did supplement other responses, it did so on October 10, 2011. See Ex. 7 to Pl's Mtn. Plaintiff also argues in paragraph 12 that verified *July 12, 2011* discovery responses improperly contained an objection referencing the need for a protective order. The objection was not improper as it was an objection originally transmitted to Plaintiff's counsel on July 12, 2011 and later verified after the parties discovered the absence of contemporaneous verification. The exact document was verified. Accordingly, there was no need to *remove* this prior objection. Significantly, the supplemental discovery responses transmitted on October 10, 2011 do not reference the need for a (since entered) protective order.

Paragraph 11 of Plaintiff's Motion argues that it issued supplemental interrogatories and essentially asked Defendant to "immediately contact me" if Defendant believed that Plaintiff had exceeded the permissible number of interrogatories. Essentially, Plaintiff asked Defendant to

---

responses is demonstrated by **Exhibits F-K** which document efforts to answer the so-called "wrong number" TCPA class. Oddly, it is Plaintiff who has refused to negotiate the format in which the TCPA could be provided even where Defendant offered to provide additional data. *See* **Exhibits I-J** ("if Defendant makes an over production, Plaintiff will take appropriate action.").

stop what it was doing and "pre-object" (Defendant's words) before any discovery response was due. In doing so, Plaintiff presumed that she had exceeded the permissible number of interrogatories when she issued her Second Set of Interrogatories. Plaintiff's demand for an immediate response from Defendant was not proper or required by FRCP 33. Accordingly, until Defendant's responses were due, Defendant was not required to confer with Plaintiff. Given the fact that this discovery was *not* issued on the eve of the closure of discovery, there was not need for an immediate objection. As this Court may remember, Plaintiff also claimed at the last statute that the objections were untimely. Apparently Plaintiff has withdrawn that statement as he never explained his basis for this claim despite being asked to do so. *See* **Exhibit L**.

In any event, consistent with FRCP 1, Defendant *answered* the Second Set of Discovery notwithstanding the objection that Plaintiff had exceeded the permissible number. That is just one of the reasons defense counsel was exasperated at the parties' last court appearance where Plaintiff's counsel tried to score points with this Court by raising this issue in what appeared to be an oral motion to compel.

      **B.**      **Aspects of Plaintiff's Motion Are Based Upon a Distortion of the Record**

Paragraph 6 of Plaintiff's Motion correctly notes that the parties had a Rule 37.2 conference with regard to Defendant's initial discovery answers (see Exhibit 1 to Pl's Mtn.). Paragraphs 8 of Plaintiff's Motion, however, improperly accuses Defendant for failing to supplement its response to Interrogatory No. 6 when it supplemented *other* interrogatory answers (see Defendant's Supplemental Discovery Responses, Ex. 7 to Pl's Mtn.). That is because during the parties' Local Rule 37.2 conference, Defense counsel did not specifically ask Defendant to supplement Interrogatory No. 6. Again, it Plaintiff had requested compliance at that time, defendant would have immediately undertaken efforts to secure a response.

7

It was only after October 10, 2011, that Plaintiff contacted Defendant to supplement Interrogatory No. 6. Thereafter, Defendant attempted to respond to Interrogatory No. 6, and his preliminary answer (which he immediately forwarded to Plaintiff's counsel) identified 82,913 messages. *See* Pl's Mtn, para. 9. *See also*, Exhibits F-K to this Response. This demonstrates that Defendant *was* attempting to investigate and respond to this Interrogatory *after* a follow up response was requested by Plaintiff's counsel.

It should be noted that at no time does Plaintiff suggest that Judge Holderman thought that any improper delay or conduct was being made by Defendant in terms of objecting to and discussing class based discovery on the record. Surely Judge Holderman would have stated something on the record if he thought Defendant was engaging in some sort of improper delay as Plaintiff suggests? Instead, Judge Holderman suggested to the parties at the last status that they should engage in measured discovery in light of the pending *Soppet* interlocutory appeal. That should put to rest Plaintiff's conspiracy theory that there is a concerted effort to delay this case?

Paragraph 14 of Plaintiff's Motion improperly argues that the parties "had a face to face meeting *and discussed Defendant providing a supplement response to Interrogatory No. 6 . . . .*" (Emphasis supplied). While a brief discussion took place at the Dirksen building near the elevators in terms of Defendant providing a verified response to the supplemental discovery responses. No discussion took place in terms of Interrogatory no. 6, or surely Plaintiff's counsel would have mentioned it *See, e.g.,* **Exhibit M** (Vlahakis email to Warner dated 10/04/2011 at 04:29 PM). As noted above, the supplemental discovery responses were emailed to Plaintiff's counsel on October 10, 2011. *See* Pl's Mtn., Exhibit 7. Significantly, Plaintiff's counsel's email shortly after the receipt of the supplemental response does not even mention the allegedly

8

promised response to Interrogatory no. 6. *See* **Exhibit N** ("Is this the final supplementation of the interrogatory responses and document production, and requests for admission?").

Defense counsel emailed Plaintiff's counsel a verified answer to Interrogatory No. 6 on October 24, 2011 to ask "[l]et me know if there is anything else you need in terms of discovery." *See* **Exhibit O.** At that time, the data simply identified the total number of potential messages. As discussed above, while the number has been culled down to 1,109 accounts, Defendant still needed to sort through outgoing phone records to determine if complete messages were actually left. *See* para. 29 of Plaintiff's Mtn. (reciting defense counsel's statement).

It was only on November 8, 2011 that Judge Holderman clarified that he thought class discovery should proceed. *See* para. 27 of Plaintiff's Mtn. While defense counsel agreed to provide supplemental discovery responses and thought two weeks was a sufficient time (see Ex. 12, p. 8, lines 13-17), Judge Holderman did not impose a due date for Defendant to provide this data. <u>On November 14</u>, 2011, defense counsel informed Plaintiff of the need to "cull" the FDCPA records, that Defendant was "in the process of working on the TCPA class" and that he would "report back next week." *See* para. 29 of Plaintiff's Mtn. See also **Exhibit K**.

Thereafter, in the weeks after the last court appearance before Judge Holderman and defense counsel's November 14th email, defense counsel traveled to New Jersey for depositions on November 15 and 16, 2011. Upon returning to Chicago for one day, defense counsel embarked on a family trip to Disneyland and then a family trip to Michigan over the week of Thanksgiving.[4] During this time, defense counsel was not in direct email communication with Defendants (as they were on holiday as well) and he was unable to continue to verify the

---

[4] Plaintiff's counsel was aware that defense counsel would be out of the office. *See* Exhibit Q.

requested date. Without any further communication from Plaintiff's counsel, Plaintiff filed the instant motion on the Monday following Thanksgiving. Since counsel have numerous cases together, these trips were discussed at numerous times and in direct relation to this case (in both email and telephonically). Accordingly, the timing of Plaintiff's Motion is suspect. It seems rather improper to demand immediate compliance after the status before Judge Holderman and file a Motion to Compel; while knowing that defense counsel is out of his office for two weeks.

Plaintiff's "hurry up offence" does not appear to appreciate the fact that no looming deadlines exists in this case nor does it point to any firm due date imposed by the court, or defense counsel when the issue was last discussed by Judge Holderman. In fact, discovery is set to close on March 16, 2012. See dkt. no. 34.

Further, Plaintiff does not understand, nor respect the fact that it is not a simple process to verify this response. Defense counsel was required to verify numerous aspects of this response with Defendant's Director of Information Systems, who is not on defense counsel's "beck and call." Plaintiff's counsel's apparent desire to have Defendant put everything on hold (prior do, during and after his time away from the office) to provide him with a verified answer may stem from the fact that Plaintiff's counsel does not have an appreciation for the time required to operate a business and response to *voluminous* class based discovery.[5] This is especially true if it can be expected that Plaintiff's counsel will undoubtedly file a motion for sanctions if he later learns that a discovery response was incomplete.

---

[5] Rather, as this Court has surly observed, discovery in a consumer class action is largely one way: Plaintiff's issue class based discovery to defendants and the parties litigate the production and relevance of class based discovery. As a general matter, the plaintiff is deposed and plaintiff's counsel is not required to produce voluminous class based discovery to a defendant. It is this apparent disconnect that does not allow Plaintiff to appreciate the fact that discovery responses take time.

Again, as noted above, at no time does Plaintiff suggest that Judge Holderman thought that any improper delay or conduct was being made by Defendant in terms of objecting to and discussing class based discovery on the record. Surely Judge Holderman would have stated something on the record if he thought Defendant was engaging in some sort of improper delay as Plaintiff suggests? Instead, Judge Holderman suggested to the parties at the last status that they should engage in measured discovery in light of the pending *Soppet* interlocutory appeal. That should put to rest Plaintiff's conspiracy theory?

### D. Plaintiff's Motion For Sanctions With Regard to the FRCP 30(b)(6) Deposition Is Based Upon a Distortion of the Record and Should Be Denied

Conveniently, Plaintiff did not include the entire transcript (for good reason). That because the deponent testified that he under stood that both the TCPA and FDCPA class figures were investigated by his in-house technology person. Exhibit Q, pp. 83-85, 124-28. The deponent also testified that he thought at least 120 hours of time has been spent investigating the case and exploring discovery issues. Exhibit Q, p. 98. He also specifically testified as to his understanding of MRSI's investigation in to the 82,913 purported MRS message calls. *Id*. at p. 91-94.

### III. Conclusion

Again, despite an unsubstantiated claim of "stonewalling" (see Plaintiff's Motion at paragraph 41, there is no basis in the record to suggest that Defendant is stonewalling. Rather as noted above, Defendant is trying to ensure that it is providing accurate discovery responses. This, of course, takes time. See **Exhibits F-H, K**. Oddly, it is Plaintiff who has refused to negotiate the format in which the TCPA could be provided even where Defendant offered to provide additional data. *See* **Exhibits I-J** ("if Defendant makes an over production, Plaintiff will take appropriate action."). Ignoring these facts, Plaintiff's counsel has engaged in vexatious

litigation and has filed a specious motion in terms of the deposition testimony of Defendant's 30(b)(6) witness. Plaintiff's motives in bringing this Motion are suspect given his recent unprofessional exchanges with defense counsel. *See* Exhibits A and C to this Motion. For these reasons, Plaintiff's Motion should be denied and Plaintiff's counsel should be admonished by this Court and/or fined under 28 U.S.C. § 1927.

        /s/ James C. Vlahakis
Attorneys for Defendant, MEDICAL RECOVERY SPECIALISTS, LLC,

HINSHAW & CULBERTSON, LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
Telephone: (312) 704-3000
jvlahakis@hinshawlaw.com

**CERTIFICATE OF FILING**

I hereby certify that on December 6, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

Respectfully submitted,

By: /s/ James Vlahakis

James C. Vlahakis
HINSHAW & CULBERTSON LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601
312-704-3000
jvlahakis@hinshalaw.com