# Exhibit G



**James Vlahakis /HC01**
10/12/2011 03:34 PM

To cwarner@warnerlawllc.com
cc
bcc
Subject Fw: MRSI

| | Who | Date | Time | Subject |
|---|---|---|---|---|
| | cwarner | 10/12/2011 | 03:34 PM | Fw: MRSI |
| | Curtis Warner | 10/12/2011 | 03:45 PM | Re: MRSI |
| | Curtis Warner | 10/12/2011 | 03:49 PM | Re: MRSI |

Curtis,

In light of your clarifications, I contacted the tech person and a few issues are coming up and are giving me some concern.

You've asked us to go back 4 years to identify the cell phone number that was called. While we may know that a so-called wrong number was reported on an account, I've discovered that the historical process for reporting such calls involves removing the number from the collection records at the time the alleged wrong number is reported. In other words, the collection screens typically replace the number with 999-999-9999. To get around this, I'm looking to determine whether we can go back 4 years in time and pull phone logs and link them to the account to see which number was called and reported as a wrong number. This may involve a HUGE collection and transfer of data.

And as for the start and end report for reported wrong numbers, we should talk about how we can capture data if one or more phone numbers were reported as bad. For example, absent an account by account review, I don't think we'll be able to know WHICH number was bad. Accordingly, we may have to pull start and end records for more than one number. Does that make sense?

Finally, how do you intend to have us limit the number so U.S. Cellular? Are you proposing that we give all alleged cell numbers to U.S. Cellular to see which ones they claim as their own?

Are you free to chat Monday on these issues?

---

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
312-704-3001 [fax]
----- Forwarded by James Vlahakis/HC01 on 10/12/2011 03:25 PM -----

**James Vlahakis /HC01**
10/12/2011 01:56 PM

To Curtis Warner
cc
Subject MRSI

Curtis.

You asked us the following questions last week - see our answers below:

> Also I am available to discuss whether or not Defendant can provide me the following
> information regarding persons who its autodialer called:
>
> (1) The name of those persons whose collection notes show that the number was a wrong or
> bad number;
> (2) The cell phone number that was called by the autodialer corresponding to the person
> identified in (1) above; and
> (3) The date range when from when the first autodialed call was made to the date the last
> autodialed call was made.

**Answers**

1.       As I now understand  your question from our discussion today, you asking for the name of the
debtor that Defendant was attempting to call.  That being the case, Defendant can obtain the names of
persons that were called where its collection notes reflect a reported wrong number.  As I explained,
Defendant cannot necessarily identify whether the call it made was to a cell phone at the time the call was
placed or whether the wrong number report related to a home/work number.  Also, Defendant cannot
agree that the number was in fact a wrong number.
2.       As noted above, Defendant cannot identify whether the call it made was to a cell phone at the time
the call was placed.  Please note that Defendant does not concede that an autodialer was used.
3.       As I now understand  your question from our discussion today, without conceding that an
autodialer was used, you are asking us to identify the start and end date before the number was reported
as a so-called wrong number.  I will look into this with our IT person.  Don't hold me to this, but I think we
should be able to identify the dates.

Note, however, that I can't guarantee that Defendant will agree to produce the records to you absent a
court order.

Let's circle back before we appear before Judge Holderman to allow me to report back on item 3.  In the
meantime, I will work on getting net worth by Friday and any other documents to you ASAP.

-James

_____

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
312-704-3001 [fax]

# Exhibit H



James Vlahakis /HC01
10/14/2011 12:16 PM

To Curtis Warner <cwarner@warnerlawllc.com>
cc
bcc
Subject Re: MRSI

| Who | Date | Time | Subject |
|---|---|---|---|
| Curtis Warner | 10/13/2011 | 11:54 AM | Siegel |
| Curtis Warner | 10/13/2011 | 12:34 PM | Re: Siegel |
| Alex Burke | 10/13/2011 | 12:39 PM | RE: Siegel |
| Alex Burke | 10/13/2011 | 12:43 PM | RE: Siegel |

Curtis,

Upon further discussion with the tech person, I realize that we're going to encounter difficulties pulling so-called "wrong number" calls prior to 2/10/2010. Prior to that date wrong number calls were not coded with RBP. While we searched four years of data, a more detailed examination of the resulting data shows that the 5,520 potential "wrong number" reports appear after 2/10/2010. Meaning, if you want to go back further in time to locate more wrong numbers, MRSI will have to write a complex program which will utilize "wild card searches" to search for manually inputted "wrong number" or "bad number" reports. That's going to be a tremendous task considering the database of calls placed going back 3 years prior to 2/2010.

Long story short, the 5,520 number appears unchanged, it's just a question of whether it could get larger if the records are reexamined as outlined above.

Let's chat through this on Monday at 1:30.

———————————————

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
312-704-3001 [fax]

# Exhibit I



| | **Curtis Warner**<br><cwarner@warnerlawllc.com> | **To** | James Vlahakis <jvlahakis@hinshawlaw.com> |
|---|---|---|---|
| | | **cc** | |
| | | **bcc** | |
| | 10/18/2011 10:38 AM | **Subject** | Tang v. Medical Recovery |

| History: | ⟲ This message has been replied to. | | |
|---|---|---|---|
| Who | Date | Time | Subject |
| Curtis Warner | ⟲ 10/18/2011 | 10:38 AM | Tang v. Medical Recovery |

Mr. Vlahakis,

In a follow up to our conversation yesterday, please be advised that I only want the TCPA class information that I requested in the format in which it was requested. Any inclusion of all the times a Defendant placed a call to a number that was later reported as wrong is not the information requested and I will consider it to be in violation of the rules of discovery. Plaintiff's interrogatory regarding the TCPA class requests Defendant to: (1) Identify the name of the person it intended to call; (2) state the date of the first call placed to the cell phone number identified as a wrong number; (3) state the date of the last call placed to the cell phone number identified as a wrong number; and (4) state the cell phone number called that was identified as a wrong number.


Regards,

Curtis Warner

- - - - - - - - - - - - - - - - - -
Curtis C. Warner  cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
312.238.9820 (TEL)
312.638.9139 (FAX)
www.warnerlawllc.com

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

**********************************************************************
********
Any tax advice contained in this email was not intended to be used,
and cannot be used, by you (or any other taxpayer) to avoid penalties
under the Internal Revenue Code of 1986, as amended.

# Exhibit J



**Curtis Warner**
<cwarner@warnerlawllc.com
>

10/18/2011 11:45 AM

To   <jvlahakis@hinshawlaw.com>

cc

bcc

Subject   Re: Tang v. Medical Recovery

| | Who | Date | Time | Subject |
|---|---|---|---|---|
| | Curtis Warner | 10/18/2011 | 11:32 AM | RE: Tang v. Medical Recovery |
| | Curtis Warner | 10/18/2011 | 11:45 AM | Re: Tang v. Medical Reco... |

I am not going to debate this with you further. Plaintiff's point is clear and if Defendant makes an over production, Plaintiff will take appropriate action.


Regards,

Curtis Warner

- - - - - - - - - - - - - - - - - -

Curtis C. Warner  cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
312.238.9820 (TEL)
312.638.9139 (FAX)
www.warnerlawllc.com

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
*************************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

On 10/18/11 11:32 AM, "jvlahakis@hinshawlaw.com" <jvlahakis@hinshawlaw.com> wrote:


Curtis.

Please identify the purported Rule that would be violated. As I explained,

consistent with FRCP 1, we beloved the dates of all calls should be added.
That we may know if calls were places to the right and/or wrong parties.
Further I think the ediscovery program as well as FRCP 33 and 34 require a
more collaborative approach than you demanding strict compliance with your
discovery request. Finally, all you have yo do is ignore the call dates
when it is produced.

Let's chat about this in advance of court on Thursday. What works for you?

James.

James C. Vlahakis
Hinshaw & Culbertson LLP
222 N. LaSalle Suite 300
Chicago IL 60601
312-704-3715
312-704-3001 Fax

-------- Original Message --------

From :   Curtis Warner <cwarner@warnerlawllc.com>
To : James Vlahakis <jvlahakis@hinshawlaw.com>
Cc :
Sent on : 10/18/2011 10:38:07 AM
Subject : Tang v. Medical Recovery

Mr. Vlahakis,

In a follow up to our conversation yesterday, please be advised that I only
want the TCPA class information that I requested in the format in which it
was requested. Any inclusion of all the times a Defendant placed a call to
a number that was later reported as wrong is not the information requested
and I will consider it to be in violation of the rules of discovery.
Plaintiff's interrogatory regarding the TCPA class requests Defendant to:
(1) Identify the name of the person it intended to call; (2) state the date
of the first call placed to the cell phone number identified as a wrong
number; (3) state the date of the last call placed to the cell phone number
identified as a wrong number; and (4) state the cell phone number called
that was identified as a wrong number.

Regards,

Curtis Warner
- - - - - - - - - - - - - - - - - -
Curtis C. Warner  cwarner@warnerlawllc.com
Warner Law Firm, LLC

Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
312.238.9820 (TEL)
312.638.9139 (FAX)
www.warnerlawllc.com <http://www.warnerlawllc.com>

The contents of this message may be privileged and confidential. Therefore,
if this message has been received in error, please delete it without
reading it. Your receipt of this message is not intended to waive any
applicable privilege. Please do not disseminate this message without the
permission of the author.
****************************************************************************
Any tax advice contained in this email was not intended to be used, and
cannot be used, by you (or any other taxpayer) to avoid penalties under the
Internal Revenue Code of 1986, as amended.


Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to
be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the
addressee(s) named in this message. This communication is intended to be and to remain
confidential and may be subject to applicable attorney/client and/or work product privileges. If
you are not the intended recipient of this message, or if this message has been addressed to
you in error, please immediately alert the sender by reply e-mail and then delete this message
and its attachments. Do not deliver, distribute or copy this message and/or any attachments
and if you are not the intended recipient, do not disclose the contents or take any action in
reliance upon the information contained in this communication or any attachments.

# Exhibit K



| | James Vlahakis /HC01 | | To | <cwarner@warnerlawllc.com> |
| | 11/14/2011 04:41 PM | | cc | |
| | | | bcc | |
| | | | Subject | Re: Tang v. Medical Recovery |

| Who | Date | Time | Subject |
|---|---|---|---|
| cwarner | 11/11/2011 | 03:24 PM | Tang v. Medical Recovery |
| cwarner | 11/14/2011 | 04:41 PM | Re: Tang v. Medical Reco |
| Curtis Warner | 11/14/2011 | 04:51 PM | Re: Tang v. Medica |
| Curtis Warner | 11/14/2011 | 04:52 PM | Re: Tang v. |

Mr. Warner.

I thought the parties mooted the need for consultation with the E-discovery liaison in light of my representation that we would be verifying the potential universe of TCPA wrong number putative class members (to be winnowed down as the court suggested). As I understood things, after we provided those answers to you all other class based discovery would be effectively stayed. Additionally, since we were going to look at just the universe of 5000 or so RBPs, you were not going to need to talk to him about how were would gather wrong numbers before the RBP code was utilized.

In light of the above, please explain why you need to speak with the EDL.

As for the verified answers, I've asked the EDL to cull down the FDCPA list as we discussed and I expect to have that done shortly. We are also in the process of working on the TCPA class. I'll report back next week on the status of these requests ASAP. I anticipate that the lists will be completed by mid-week.

-James

---

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
312-704-3001 [fax]
<cwarner@warnerlawllc.com>



| <cwarner@warnerlawllc.com> | | To | jvlahakis@hinshawlaw.com |
| 11/11/2011 03:24 PM | | cc | |
| | | Subject | Tang v. Medical Recovery |

Mr. Vlahakis,
Please see the attached letter designating parts of Mr. Jose Rivera's deposition as

confidential.

I still have not received word from you some dates and times when your client's e-discovery person will be available to hold a conference.

Finally, I have not yet been provided a verified interrogatory response to regarding the TCPA class information as discussed before Judge Holderman. Please promptly make that disclosure.

--
Curtis Warner
- - - - - - - - - - - - - - - - -
Curtis C. Warner  cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
312.238.9820 (TEL)
312.638.9139 (FAX)
www.warnerlawllc.com

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
**************************************************************************
*****
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended-

# Exhibit L



**James Vlahakis /HC01**
11/02/2011 05:59 PM

To  Curtis Warner <cwarner@warnerlawllc.com>

cc

bcc

Subject  Re: Medical Recovery

| Who | Date | Time | Subject |
|---|---|---|---|
| Curtis Warner | 09/27/2011 | 04:25 PM | Medical Recovery |
| Curtis Warner | 11/02/2011 | 05:59 PM | Re: Medical Recovery |

Curtis:

Today you represented in open court that Defendant's answers to Plaintiff's second set of discovery requests were untimely.  Consistent with FRCP 1 and LR 37.2, I am writing to you to have you explain to me why you believe that your statement to the court was accurate.


-James
_____

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
312-704-3001 [fax]

# Exhibit M



James Vlahakis /HC01
10/04/2011 04:29 PM

To  Curtis Warner <cwarner@warnerlawllc.com>
cc
bcc
Subject  Re: Medical Recovery



| Who | Date | Time | Subject |
|---|---|---|---|

Hello Curtis.

I'll forward on your questions to the client. Should we set a time to discuss this on next Tuesday? Normally I'd jump on this a lot quicker but I need to head to Michigan on Friday morning to be with my sister for the funeral of her long-time boyfriend. He died unexpected the other day (45 years young).

In the meantime, I'll work on getting the verified answers signed and emailed to you before I leave.

-James

_____

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
312-704-3001 [fax]
Curtis Warner <cwarner@warnerlawllc.com>



Curtis Warner
<cwarner@warnerlawllc.com
>
10/04/2011 04:22 PM

To  <jvlahakis@hinshawlaw.com>
cc
Subject  Re: Medical Recovery

Mr. Vlahakis,

Per our face to face conversation today, I asked for the supplemented version of the verified discovery responses. When can I expect those verified supplemental responses?

Also I am available to discuss whether or not Defendant can provide me the following information regarding persons who its autodialer called:
(1) The name of those persons whose collection notes show that the number was a wrong or bad number;

(2) The cell phone number that was called by the autodialer corresponding to the person identified in (1) above; and
(3) The date range when from when the first autodialed call was made to the date the last autodialed call was made.

Please advise.


Regards,

Curtis Warner
- - - - - - - - - - - - - - - - - -
Curtis C. Warner  cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
312.238.9820 (TEL)
312.638.9139 (FAX)
www.warnerlawllc.com

The contents of this message may be privileged and confidential. Therefore, if this message has been
received in error, please delete it without reading it. Your receipt of this message is not intended to
waive any applicable privilege. Please do not disseminate this message without the permission of the
author.
*************************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any
other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.




On 10/3/11 5:40 PM, "jvlahakis@hinshawlaw.com" <jvlahakis@hinshawlaw.com> wrote:


Curtis.

Please see attache verified discovery responses.

FYI, please hold the case as I will be coming to it after a motion before Judge Coleman.

Thanks.

-James

_____

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300

Chicago, IL 60601
312-704-3715
312-704-3001 [fax]

**Curtis Warner <cwarner@warnerlawllc.com>** 09/29/2011 02:34 PM

To

James Vlahakis <jvlahakis@hinshawlaw.com>

cc

Subject

Medical Recovery

Plaintiff is available for her deposition in this matter on Oct. 20 following her deposition in Siegel. We request a 45 minute break in between the two depositions for lunch.

Regards,

Curtis Warner
- - - - - - - - - - - - - - - - - -
Curtis C. Warner  cwarner@warnerlawllc.com <cwarner@warnerlawllc.com>
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
312.238.9820 (TEL)
312.638.9139 (FAX)
www.warnerlawllc.com

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.

*************************************************************
**********************

Any tax advice contained in this email was not intended
to be used, and cannot be used, by you (or any other
taxpayer) to avoid penalties under the Internal Revenue
Code of 1986, as amended.

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to
be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the
addressee(s) named in this message. This communication is intended to be and to remain
confidential and may be subject to applicable attorney/client and/or work product privileges. If
you are not the intended recipient of this message, or if this message has been addressed to
you in error, please immediately alert the sender by reply e-mail and then delete this message
and its attachments. Do not deliver, distribute or copy this message and/or any attachments
and if you are not the intended recipient, do not disclose the contents or take any action in
reliance upon the information contained in this communication or any attachments.

# Exhibit N



Curtis Warner
<cwarner@warnerlawllc.com
>
10/10/2011 10:20 AM

To "jvlahakis@hinshawlaw.com" <jvlahakis@hinshawlaw.com>

cc

bcc

Subject Re: Tang vs. MRSI verified supp discovery answers

| Who | Date | Time | Subject |
|---|---|---|---|
| cwarner | 10/10/2011 | 09:44 AM | Tang vs. MRSI verified supp dis |
| Curtis Warner | 10/10/2011 | 10:20 AM | Re: Tang vs. MRSI verifie |

Is this the final supplementation of the interrogatory responses and document production, and requests for admission?

Sent from my iPhone
Curtis Warner

On Oct 10, 2011, at 9:44 AM, jvlahakis@hinshawlaw.com wrote:

> Curtis.
>
> Here is the verified supplemental discovery answers.
>
> Have a good day. I'll send the draft Release in Tang. vs. Siegel later today.  We're scheduled to chat in that case tomorrow, correct?
>
> -James
>
> _____
>
> James C. Vlahakis
> Hinshaw & Culbertson, LLP
> 222 N. LaSalle, Suite 300
> Chicago, IL 60601
> 312-704-3715
> 312-704-3001 [fax]
>
>
> Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).
>
> The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product

privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.

<Supp Int Answers Verified TANG vs. MEDICAL RECOVERY.pdf>

# Exhibit O



| | James Vlahakis /HC01 | To | <cwarner@warnerlawllc.com> |
|---|---|---|---|
| | 10/24/2011 12:16 PM | cc | |
| | | bcc | |
| | | Subject | Re: Tang v. MRSI |

| | Who | Date | Time | Subject |
|---|---|---|---|---|
| | cwarner | 10/19/2011 | 10:17 PM | Tang v. Pita Inn |
| | cwarner | 10/21/2011 | 04:00 PM | Re: Tang v. MRSI |
| | cwarner | 10/24/2011 | 12:16 PM | Re: Tang v. MRSI |
| | Curtis Warner | 10/24/2011 | 01:09 PM | Re: Tang v. MRSI |

Curtis,

I've attached the verified supplemental discovery response to Interrogatory No. 6. Note that the proof of service says the 21st (the date I was hoping to get this back to you).

Let me know if there is anything else you need in terms of discovery.

FYI, I have a case in front of Judge Holderman at 9 am tomorrow. I'm going to try to get it first on the call if possible. Just to be safe, would you mind pushing the dep back to 10:30 a.m.? Thanks.



Verified Discovery Supo Response Int. 6 MRSI.pdf

-James

_____

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
312-704-3001 [fax]

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LOIDY TANG, individually and on behalf of a class, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 11-C-2109 ) |
| MEDICAL RECOVERY SPECIALISTS, LLC, d/b/a MRS, d/b/a MRSI and d/b/a MEDICAL RECOVERY SPECIALISTS, INC. | ) Judge Holderman ) ) Magistrate Judge Schenkier ) |
| Defendant. | ) ) ) |

## DEFENDANT'S SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 6

NOW COMES Defendant, Medical Recovery Specialists, LLC ("Defendant"), by and

through its attorneys, HINSHAW & CULBERTSON LLP, and for its Supplemental Answer to

Interrogatory No. 6, states as follows:

**Interrogatory No. 6.** For a time period from March 25, 2010 to March 25, 2011, please
state the number of persons, and identify those persons including their name and last known
address, with a telephone number corresponding to the 773 area code where Defendant left a
prerecorded message in the form alleged in paragraph 20 of the Complaint in this lawsuit.

**Answer:** Objection the identification of potential class members is premature. Subject to
and without waiving this objection, Defendant states that 82,913 messages were left.

Respectfully submitted,

By: s/James C. Vlahakis
    James C. Vlahakis
    Attorney for Defendant
    HINSHAW & CULBERTSON LLP
    222 North LaSalle, Suite 300
    Chicago, IL 60601-1081
    tel: 312-704-3000
    jvlahakis@hinshawlaw.com

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, that to the best of my knowledge, information and belief, that the above Interrogatory Answers are true and correct.

By: _Joe A. Rivas_

2

I hereby certify that on October 21, 2011, I served the above document on counsel of record:

Curtis C. Warner cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
312.238.9820 (TEL)
312.638.9139 (FAX)
www.warnerlawllc.com

By: /s/ James C. Vlahakis
James C. Vlahakis
Hinshaw & Culbertson LLP
222 North LaSalle, Suite 300
Chicago, IL 60601
t 312-704-300
f 312-704-3001
jvlahakis@hinshawlaw.com

3

130195773v1 0922512 75799

# Exhibit P

JOSE RIVERA                                                October 25, 2011

81

1    Q   Did defendant do any investigation to
2    determine the number of people to which that message
3    was left for?
4         MR. VLAHAKIS:  Object to the form of the
5    question, beyond the scope.
6         THE WITNESS:  It appears so.
7    BY MR. WARNER:
8    Q   Well, it says defendant states 82,913
9    messages were left?
10   A   Correct.
11   Q   That doesn't answer the question.  It's
12   asking specifically for the number of persons.
13   A   No.
14        MR. VLAHAKIS:  We objected to that in the
15   answer.
16        THE WITNESS:  I don't know.
17   BY MR. WARNER:
18   Q   We're not asking for the objection of the
19   identification.  You are objecting -- your counsel
20   only objected to the identification.  That's why I
21   skipped and identified the persons including their
22   name and last known address.  We're sticking with
23   the question of the number of persons.
24   A   I don't know.

82

1    Q   Do you know whose responsibility or maybe
2    it was assigned to to investigate the answer to
3    Interrogatory No. 6?
4    A   I don't know.
5         MR. VLAHAKIS:  Object to the form of the
6    question.
7    BY MR. WARNER:
8    Q   Has anyone talked to you other than your
9    counsel about what the response to Interrogatory No.
10   6 should be?
11   A   No.
12   Q   Did you personally do any investigation to
13   determine the accuracy of the response dated in the
14   supplemental answer to Interrogatory No. 6?
15        MR. VLAHAKIS:  Object to the form of the
16   question.
17        THE WITNESS:  I reviewed what was given to
18   me.  That's the extent of it.
19   BY MR. WARNER:
20   Q   What did you review?
21   A   This information that was given to me.
22   Q   So other than this document, you didn't
23   review anything else?
24   A   No.

83

1    Q   Have you been requested by your counsel to
2    sign any other verification statements that are
3    similar to the one that appears on Page 2 of this
4    document?
5    A   No.
6         MR. WARNER:  I have no further questions.
7         EXAMINATION
8    BY MR. VLAHAKIS:
9    Q   Do you know who Jonathan Hicks is?
10   A   Yes.
11   Q   And are you aware of any investigation
12   Mr. Hicks has done into identifying any of the
13   answers or questions related to the TCPA or FDCPA
14   claims in this case?
15   A   No.
16        MR. WARNER:  Can you repeat what his
17   question was.
18        (Whereupon, the record was
19        read.)
20   BY MR. VLAHAKIS:
21   Q   What I mean by that, do you understand if
22   he has -- I mean not the underlying facts but if he
23   has conducted searches for --
24   A   He's done searches to see how many wrong

84

1    numbers -- or how many times we left messages.  That
2    I am aware of.
3    Q   And do you understand how -- do you have
4    any understanding of what he may have done to
5    identify how many messages were left?
6    A   He did a query to my understanding.  What
7    the query involves, I don't know.  I don't know how
8    he wrote the program.  There's certain programs he
9    has to write in order to pull this information.
10   Q   You understand he did write a program?
11   A   Yes.
12   Q   What is your understanding for that?
13   A   As far as?
14   Q   That he wrote a program.
15   A   He has a program that he put together that
16   took several, several hours, if not days, in order
17   to come up with this.
18   Q   Did you have a discussion with him
19   regarding his program?
20   A   If you can understand Jonathan, yeah, I
21   guess you could.
22   Q   Did you have a face-to-face discussion
23   with Jonathan?
24   A   I have spoken to him, yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

JOSE RIVERA                                               October 25, 2011

85

1    Q   Did you speak to him face-to-face or via
2 telephone?
3    A   It would be both.
4    Q   Did you have any discussions with Jonathan
5 regarding any attempts he made to try to locate
6 wrong-number or bad-number reports?
7    A   Yeah.  The thing with that, we had
8 conversations; and that being said, this number, I
9 don't know if it's an actual true number, it's based
10 on a preset comment, LMOM, and if the person has 28
11 accounts, all 28 accounts get stamped with it.  Only
12 one call is made, but all 20 accounts get stamped.
13 So it could be a false picture.  I have no way of
14 knowing.  He has no way of knowing.  You'd have to
15 go through the whole 82,000 or 83,000 accounts
16 individually and look at them to see whether the
17 message was correct, wasn't correct, whether it was
18 a good number, a bad number, whether the person --
19 whether it was a manual, just because LMOM was
20 stamped on there doesn't necessarily mean it was an
21 automated message.  It could have been left by a
22 collector, because that's not a restricted code.
23    Q   But your understanding is he did run a
24 program to search for LMOM for the 773 area code?

86

1    A   Yes.
2    Q   For the March 25th, 2010, time period,
3 correct?
4    A   Yes.
5    Q   Are you aware of whether Mr. Hicks
6 performed any searches to uncover whether or not
7 there were wrong numbers that were reportedly called
8 on March 25th of 2005?
9    A   Yes.
10    Q   I'd like to hand you a copy of -- have you
11 reviewed this document?  To save time, I draw your
12 attention to Interrogatory No. 5.  When you are done
13 reading that...
14    A   Okay.
15    Q   And are you aware of whether Jonathan
16 performed an investigation in the preparation of
17 answering that interrogatory?
18    A   Yes.
19    Q   And what is your understanding of what the
20 result of Jonathan's investigation was?
21    A   19 numbers came up.
22    Q   Is that based on a discussion you had with
23 Jonathan?
24    A   Yes.

87

1    Q   Was anybody else a part of that discussion
2 with Jonathan?
3    A   Done Schwake may have been present.
4    Q   I'd like to draw your attention to Page 4
5 of this document.
6    A   Okay.
7    Q   Is that your signature under the
8 verification?
9    A   Yes.
10    Q   Do you recall now reviewing that discovery
11 response and signing it?
12    A   Yes.
13    Q   Is it your understanding that based on
14 telephone calls placed on March 25th, 2011, your
15 preliminary answer from Jonathan is there have been
16 19 reported wrong numbers or bad messages for calls
17 that came in up to March 25th of 2011?
18    A   Yes.
19    Q   Sorry, March 31st of 2011?
20    A   Yeah.
21    Q   Okay.  Do you have any way right now of
22 knowing whether or not those were actual wrong
23 number calls or they may have been falsely reported
24 by debtors?

88

1    A   They may have been that.  My collector may
2 have -- I have -- when you have a new representative
3 join the company and they're trained, one of the
4 longest or shortest things is preset comments.  We
5 have a slew of preset comments in place, and they're
6 taught the basic ones.  Then they in turn decipher
7 which is best for them and so on and so forth.  So
8 there's no real standard uses of preset comments.
9 So it could be -- they could be correct, they may be
10 incorrect.
11    Q   And when did you first become employed by
12 Medical Recovery Specialists?
13    A   December 6th, 1999.
14    Q   You are a current employee of Medical
15 Recovery Specialists?
16    A   Yes.
17    Q   During the time period of your employment,
18 has Medical Recovery Specialists skip traced medical
19 accounts to attempt to locate debtors?
20    A   No.
21    Q   Is it the method for contacting debtors
22 that you receive contact information from the
23 hospital which is then placed into your telephone
24 system?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Case: 1:11-cv-02109 Document #: 78-2 Filed: 12/06/11 Page 34 of 39 PageID #:724

JOSE RIVERA                                          October 25, 2011

121

1 called, and someone on the floor is working the
2 accounts, manually calling accounts and they see
3 Joe, they see predictive, they say I can't call,
4 it's part of the campaign. They bypass and won't
5 call it allowing the dialer to make the call and
6 have it speak to a representative that is actually
7 sitting at the dialer.
8    Q   Does defendant have any documents that
9 show that the hot button was ever pressed on any of
10 the calls that left a message on the machine that
11 were similar in the form of the message we heard?
12    A   No.
13       MR. VLAHAKIS: Object to the form of the
14    question.
15 BY MR. WARNER:
16    Q   Was that a no?
17    A   No.
18    Q   Does the defendant do anything to
19 ascertain prior to the predictive dialer calling a
20 telephone number whether or not the telephone number
21 is reaching the intended person?
22       MR. VLAHAKIS: Object to the form of the
23    question. What time period are we talking
24    about?

122

1       THE WITNESS: I don't understand the
2    question.
3 BY MR. WARNER:
4    Q   Okay. Defendant gets a number, a
5 telephone number?
6    A   Okay.
7    Q   Let's take a look at Exhibit F. You have
8 the second page, you got the letter of the patient
9 going out, C1, you get a mail return, no forwarding
10 address, 3/25 it goes to predictive dialer. Did
11 defendant do anything to ascertain that the number
12 that the predictive dialer was calling corresponded
13 with the intended recipient, which in this case
14 would be Leonda Busby?
15       MR. VLAHAKIS: Object to the form of the
16    question, beyond the scope.
17       THE WITNESS: To answer your question, no,
18    we relied on the information our client
19    provided us.
20 BY MR. WARNER:
21    Q   Typically, that is all that the defendant
22 does is rely on the information that is provided to
23 the defendant from the original creditor?
24    A   Correct.

123

1       (Whereupon, Exhibit L was marked
2    for identification.)
3 BY MR. WARNER:
4    Q   Have you seen this document that we have
5 marked as Exhibit L before?
6       MR. VLAHAKIS: Objection, beyond the
7    scope.
8       THE WITNESS: No, personally I haven't.
9 BY MR. WARNER:
10    Q   Do you know if prior to last week and on
11 or after September 29th, 2011, whether defendant has
12 conducted any investigation into -- for all cellular
13 telephone numbers that were called by defendant
14 using automatic dialer or artificial prerecorded
15 voice where defendants' record indicate the
16 telephone number called was a bad or wrong number --
17       MR. VLAHAKIS: Objection, beyond the
18    scope.
19 BY MR. WARNER:
20    Q   For the time period of September 29th,
21 2007, to September 29th, 2011, do you know if
22 defendant has between that time period of last week
23 and September 29th, if defendant has done any
24 investigation into answering what is proposed here

124

1 as Interrogatory No. 1?
2       MR. VLAHAKIS: Other than what he
3    testified to already?
4       THE WITNESS: No. I have no idea.
5 BY MR. WARNER:
6    Q   Okay. And now you had mentioned that
7 Mr. Hicks had conversations with your counsel or
8 with defense counsel regarding the discovery in this
9 case, is that correct?
10    A   He's provided our counsel with
11 information, correct.
12    Q   And you believe that to the best of your
13 knowledge that the defendant believes Mr. Hicks has
14 provided its defense counsel accurate information
15 regarding plaintiffs' discovery request in this
16 matter?
17    A   I believe he's provided the technical,
18 yes.
19    Q   What about accurate information?
20    A   As accurate as he can get.
21       (Whereupon, Exhibit M was marked
22    for identification.)
23 BY MR. WARNER:
24    Q   There is halfway through the page on



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

JOSE RIVERA                                        October 25, 2011

125

1  interrogatory response No. 5 it talks about wrong
2  number reports for nationwide calls placed on
3  3/25/11 covering inbound calls of wrong numbers
4  placed through 3/31/2011 is 19 identified as the
5  cells during the scrub performed this week.
6          Does that accurately reflect your
7  previous testimony regarding the number of wrong
8  number calls on 3/25/2011?
9          MR. VLAHAKIS: Object to the form of the
10         question, vague. Do you understand the
11         question?
12         THE WITNESS: No, I don't.
13  BY MR. WARNER:
14    Q  Do you remember talking about number 19?
15    A  Correct.
16    Q  What was your understanding of your
17  discussion about the No. 9 teen?
18    A  The number 19 is the number of calls that
19  fell into wrong number during that time frame.
20    Q  The time frame is?
21    A  3/25 to 3/31.
22    Q  Okay.
23    A  2011.
24    Q  So that time period. Now, there is some

126

1  information that says wrong number reports for
2  nationwide calls going back 3/25/2011 is 5,520?
3    A  Okay.
4    Q  Do you know what that 5,520 number is?
5          MR. VLAHAKIS: Object to the form of the
6          question.
7          THE WITNESS: Wrong numbers.
8  BY MR. WARNER:
9    Q  So it's people that have reported -- so
10  defendant had dialed 5,520 wrong numbers?
11    A  Possibly.
12         MR. VLAHAKIS: Object to the form of the
13         question.
14         THE WITNESS: Possibly, but then again,
15  what is a wrong number? It depends on the way
16  you are looking at it. Perfect example, back
17  to my children. I give my phone number.
18  That doesn't mean it's a wrong number. They
19  are my children. I picked it up, they asked
20  for Kenny. I say, you got the wrong number,
21  this isn't Kenny. They take out the number,
22  but Kenny is my son, or Gerino. It doesn't
23  mean that it's a wrong number. It's that it's
24  wrong to me.

127

1  BY MR. WARNER:
2    Q  Do you understand that the allegation in
3  the complaint as amended deals with wrong numbers
4  that are reported within defendants' records?
5    A  That we have notated as wrong number.
6    Q  That's correct. Do you have any evidence
7  that any of your collectors, and by evidence do you
8  have any documents that show any of your collectors,
9  the defendants' collectors wrongly reported a wrong
10  number in the collection notes?
11         MR. VLAHAKIS: Object to the form of the
12         question, objection to the scope of discovery,
13         we objected to the burdensome nature of this
14         and it's not necessarily that we have done
15         anything more than that.
16         THE WITNESS: No.
17  BY MR. WARNER:
18    Q  In your conversations with Mr. Hicks,
19  isn't it correct that as far as the amended class
20  complaint goes they have identified potentially
21  5,520 records where it shows that a wrong number was
22  reported, and that number was a cellphone number?
23         MR. VLAHAKIS: Object to the form of the
24         question.

128

1          THE WITNESS: I don't know.
2          (Whereupon, Exhibit N was
3          marked.)
4  BY MR. WARNER:
5    Q  James C. Vlahakis is one of the attorneys
6  at the law firm representing defendant in this case?
7    A  Yes.
8    Q  If you look at the second paragraph, "I
9  will issue a supplemental verified discovery
10  response to Int. No. 6. I believe the final figure
11  for area 773 code will be 1,109 accounts. The prior
12  number relates to the number of messages left."
13         Do you see that in the second
14  paragraph of this e-mail in Exhibit N?
15    A  Yes, I see it.
16    Q  So that 1,109 accounts, a person can
17  potentially have more than one account?
18    A  Yes.
19    Q  Has defendant done any investigation to
20  determine out of those 1,109 accounts stated in this
21  e-mail whether any of those accounts belong to the
22  same person?
23         MR. VLAHAKIS: Object to the form of the
24         question. Does he recall the judge told us to



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.704.4950

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

# Exhibit Q

 **James Vlahakis /HC01**
11/18/2011 02:45 PM

To  Curtis Warner <cwarner@warnerlawllc.com>

cc

bcc

Subject  Fw: Tang v. Diversified



| Who | Date | Time | Subject |
|---|---|---|---|
| Curtis Warner | 11/18/2011 | 02:45 PM | Fw: Tang v. Diversified |

Curtis, since I'm going to be on vacation for part of next week, please let me know if you'd like to propose any alternative language. I'd like to wrap this up today if possible.

Thanks.

---

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
312-704-3001 [fax]
----- Forwarded by James Vlahakis/HC01 on 11/18/2011 02:44 PM -----

**James Vlahakis /HC01**
11/18/2011 01:06 PM

To  Curtis Warner <cwarner@warnerlawllc.com>

cc

Subject  Re: Tang v. Diversified

I thought you agreed to modify it as indicated. Is there any other language you wish to propose that's a fair compromise for both parties?

---

James C. Vlahakis
Hinshaw & Culbertson, LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3715
312-704-3001 [fax]
Curtis Warner <cwarner@warnerlawllc.com>

 **Curtis Warner**
<cwarner@warnerlawllc.com
>
11/18/2011 01:03 PM

To  "jvlahakis@hinshawlaw.com" <jvlahakis@hinshawlaw.com>

cc

Subject  Re: Tang v. Diversified



I do not agree to the no solicit putative class members language and I told you that in person last week.

Sent from my iPhone
Curtis Warner

On Nov 18, 2011, at 12:57 PM, jvlahakis@hinshawlaw.com wrote:

> Curtis.
>
> Here's the revised draft order.
>
> If you're fine with these changes (or have edits to which I agree to), we can apply them to the Todd case.
>
> _____
>
> James C. Vlahakis
> Hinshaw & Culbertson, LLP
> 222 N. LaSalle, Suite 300
> Chicago, IL 60601
> 312-704-3715
> 312-704-3001 [fax]
> ----- Forwarded by James Vlahakis/HC01 on 11/18/2011 12:52 PM -----
>
>
> I meant to add that I will send you an updated draft for you approval.
>
> _____
>
> James C. Vlahakis
> Hinshaw & Culbertson, LLP
> 222 N. LaSalle, Suite 300
> Chicago, IL 60601
> 312-704-3715
> 312-704-3001 [fax]

| | | |
|---|---|---|
| James Vlahakis /HC01 | To | Curtis Warner <cwarner@warnerlawllc.com> |
| | cc | |
| 11/15/2011 01:26 PM | Subject | Re: Tang v. DiversifiedLink |

Mr. Vlahakis,

Are you going to shortly file the motion for a protective order? If not, please advise. If so, please advise if you plan on filing it after Defendant's responses are due.


Regards,

Curtis Warner
- - - - - - - - - - - - - - - - - -
Curtis C. Warner  cwarner@warnerlawllc.com
Warner Law Firm, LLC
Millennium Park Plaza
155 N. Michigan Ave. Ste. 560
Chicago, Illinois 60601
312.238.9820 (TEL)
312.638.9139 (FAX)
www.warnerlawllc.com

```
The contents of this message may be privileged and confidential. Therefore, if this message has
been received in error, please delete it without reading it. Your receipt of this message is not
intended to waive any applicable privilege. Please do not disseminate this message without the
permission of the author.
*********************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by you
(or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.
```

Curtis Warner <cwarner@warnerlawllc.com>

11/15/2011 01:25 PM

To James Vlahakis <jvlahakis@hinshawlaw.com>

cc

Subject Tang v. Diversified


Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.
<130199739_1.DOC>